(February 15, 1901.)

## MARTIN, Attorney General, *v.* STEELE, Judge.

[63 Pac. 1040.]

FRAUDULENT SALES—INSTRUCTIONS—WRIT OF ERROR.—It is error to instruct the jury in a criminal prosecution under sections 6519 and 6540 of the Revised Statutes that a sale made with intent to defraud creditors is not a fraudulent sale within the purview of said statutes.

(Syllabus by the court.)

An original proceeding for writ of error.

Frank Martin, Attorney General, and J. W. Reid, for Plaintiff in Error, file no brief.

S. B. Kingsbury and J. F. Ailshie, for Defendant in Error, file no brief.

QUARLES, C. J.—This is an application for a writ of error to review the action of the lower court in instructing the jury. There are two errors assigned, the first being: "The court erred in advising the jury to acquit the defendants, or either of them." The second being as follows: "The court erred, before so advising the jury, in instructing them as follows: 'The jury having been called in this case, and all are present. On yesterday, at the conclusion of the state's testimony, the defendants made a motion for the court to advise the jury to acquit the defendants. The motion was extensively argued yesterday afternoon, and the court has extensively examined the matter. This information has no definite name applied to it by the statute. It is a conspiracy to defraud creditors, and by this information the defendants are accused of this crime. The information charges, and it was necessary to charge, that they did combine, confederate and agree to willfully and unlawfully sell—not necessarily a criminal sale, but unlawful, not according to law. The section upon which this information is based is 6540, which is as follows: [Reading it.] The section under which they claim this information is filed is section 6519, in addition to section

6540, which reads as follows: [Reading it.] The state takes the position that any sale made with the intention to hinder, delay and defraud creditors comes within this section, and that the word "fraudulently" has practically no significance; that the sale is fraudulent whenever it is done to hinder, delay and defraud creditors. The court does not think that position is correct, and I will advert to it further on. That this case will be more fully understood, and without going fully into testimony, the testimony shows, in substance, that Mr. Hunte was the owner of a large stock of goods, and that Mr. Sweet called at his house upon other business along about the 7th of January, or the 6th, and that Mr. Hunte proposed to him to sell him his goods. He didn't go there for that purpose. Mr. Sweet told him at that time that he would consider the matter, or something of that kind, and went back to Grangeville. He then came to see him again, and Mr. Hunte, according to his testimony, states: That he told him that his creditors were worrying him to death. They were after him for money, and he didn't have money to pay them with, and offered him his goods for fifty cents on the dollar, and fifteen cents for hauling the goods, or freight charges. That when Sweet returned he told him that he would give him sixty cents on the dollar. That Hunte agreed to the sale, and the goods were taken from Nez Perces to the storehouses of the defendant in Cottonwood and Grangeville. That, as Hunte swears, probably one thousand dollars' worth of the goods were sold at that time, and he says were sold at a sacrifice. That the note was given for eight thousand dollars by Sweet, Richardson and Wilkinson to Mr. Hunte. As the court looks at this case, it is practically a question of, where a man is heavily indebted, and another man knows he is indebted, and knows that he is not going to pay his creditors, or he tells him, at least, he is not going to pay his creditors, the purchase price, can he buy those goods, even at a bargain, and would the sale be a good-faith sale, or a fraudulent sale, if he so bought them? The court would rather these burdens would not be placed upon it, but, when they are, the court has to meet them without flinching, and with the best consideration it can give them under the circumstances. If a party knows a man is

indebted, it certainly does not give to the creditors the right to claim that they hold a lien against his property so that they cannot sell it, because a party knows that another is largely indebted; and, even though he may know that it is his intention to pay the money that he gets for the goods to his creditors, it ought not to prevent the sale of the goods. The creditors have no lien upon the goods. There is no such thing as a purchase money lien, but this is to creditors generally. This is for defrauding creditors generally of their rights. Upon all the facts produced in this trial, under this statute, a mere sale of goods, knowing that the party is largely in debt—a mere sale of goods to a party who knows that the party is in debt—is not enough. There must be a fraudulent sale. The fraudulent sale consists of some scheme between the defendant, Hunte, and Wilkinson, Richardson, and others, whereby these goods will be so appropriated or concealed, or something different done with them from a mere sale—a transfer from one party to another. There must be something in the sale itself that is fraudulent. For instance, Mr. Sweet, Richardson, and Wilkinson might agree that they would hold these goods in trust for Mr. Hunte, and that they would hold them so that the creditors could not get at them, and, after the creditors had got tired—got tired of working for their money—they would make it all right with Mr. Hunte. This would be a fraudulent sale—a fraudulent disposition of the property. Or if they agreed to aid him in concealing the property, or anything of that kind. But here it is stated by the state that the sale of the property—and the evidence shows that there was an absolute sale of it—was made for fifty cents or sixty cents on the dollar, and this is the proof before the court. Whether it amounted to eight thousand dollars or more, whatever it was, the contract before the court is that they were to receive sixty cents on the dollar of the invoice price, and they were sold by Hunte to Wilkinson, Richardson, and Sweet. If there was not a fraudulent sale, however much it may have been done with the intent to defraud the creditors, it doesn't matter. Every word of the statute must be given meaning to, and to sell is not necessarily fraudulent because it is done with intent to hinder, delay and defraud creditors. There must be

something in the sale itself, in the acts of the parties between themselves, that it is a fraud. There must be something that can be set aside, as between the parties, as a fraud. A fraud vitiates everything. It burns and blisters wherever it goes. Every transaction touched by fraud is vitiated and made illegal. And, where the statute says a fraudulent sale, it means a fraudulent sale—something in the sale itself; something in the acts of the parties between themselves that carries this out; a secreting of the goods, or secret plan between themselves. Other questions have been presented in this case. One is the question of the corroboration of the accomplice. The court would have to instruct the jury that the testimony of an accomplice is not sufficient, and they could not convict upon his testimony alone, although they might believe beyond a reasonable doubt every word that he said. The common law didn't use to be this way, but it is so now, under our statute. But that matter the court could have submitted to the jury, and would have done so, but the whole feature of this case, the whole underlying principles of this case, as the court believes, for a criminal action, are not correct. There is in the court's mind (and the court is nothing more than a lawyer among you) an idea that there is a misapprehension of the criminal statute—as to what it takes, under this statute, to make parties guilty of the crime charged. All of the facts shown in this case might show Mr. Hunte guilty of the crime defined in section 6519. It might show that he, because he sold his note, and that he said he was going to defraud his creditors, is guilty of that charge. But the sale between him and Mr. Sweet, Richardson, and Wilkinson, as is detailed here before the court and before the jury, the court does not believe that, even as against him, the facts shown in this matter would have convicted him. The sale was not fraudulent as between him and Sweet, Richardson, and Wilkinson. There was an intent to defraud creditors, but the sale itself was not a fraudulent sale, as the court believes.' "

The object of this proceeding is to determine whether or not the lower court correctly interpreted or construed sections 6519 and 6540 of the Revised Statutes of Idaho, which are as follows:

"Sec. 6519. Every debtor who fraudulently removes his prop-

erty or effects out of this territory, or fraudulently sells, conveys, assigns, or conceals his property with intent to defraud, hinder or delay his creditors of their rights, claims, or demands, is punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars, or by both."

"Sec. 6540. If two or more persons conspire: (1) To commit any crime; (2) falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime; (3) falsely to move or maintain any suit, action, or proceeding; (4) to cheat and defraud any person of any property by any means which are in themselves criminal, or to obtain money or property by false pretenses; or (5) to commit any act injurious to the public health, to public morals, or for the perversion or obstruction of justice or the due administration of the laws; they are punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars, or both."

Inasmuch as a review of the evidence introduced upon the trial in the lower court, and the proceedings therein, is not necessary to a determination of the questions presented, we deem it best to deny the writ, but to express our views as to the correctness of the instruction given by the trial court. The propriety of this course is more apparent when it is remembered that the only purpose to be subserved by granting the writ and the hearing upon the return thereto is to obtain the views of this court as to the correctness of the construction of said statutes. Under these conditions, we have concluded to express our views as to the construction of said statutes as shown by the instructions of the trial court set forth in the petition of the plaintiffs in error. The object and purpose of the two statutes in question is apparent. Their primary object is the protection of creditors against those fraudulent acts of their debtors which tend to prevent, delay, or hinder the collection of the claims of the creditors. Under the statutes cited *supra,* it is a crime for the debtor to sell or dispose of his property with intent to defraud, hinder, or delay his creditors, and it is a crime for other parties to conspire with him and aid and assist him in accom-

plishing such result. The trial court instructed the jury, in effect, that the transaction was made with intent to defraud creditors, but that the sale was not a fraudulent sale; that a sale is not necessarily fraudulent because it is made with intent to hinder, delay, and defraud creditors. To our minds, this was not a proper instruction, nor a proper construction of the statutes in question. This was the purpose and intent of the sale alleged in the information to have been made by the defendant Hunte. If this intention was known to his codefendants, who, knowing such intent and purpose, encouraged him in making such sale, and actually purchased the property which Hunte, the debtor, was attempting to place beyond the reach of his creditors, such sale was fraudulent, and was prohibited by section 6519, *supra*—was criminal—and his codefendants, who purchased from him, violated subsection 4 of section 6540, *supra*. This sufficiently disposes of the second error alleged in the petition.

Sullivan and Stockslager, JJ., concur.